JANVIER, Judge.
The automobile collision from which this litigation results took place at the intersection of Jackson Avenue and Caron-delet Street, in New Orleans, shortly after ten o’clock on the morning of July 6, 1956.
Jack Barrow, one of the plaintiffs, was driving his car on Jackson Avenue in the direction away from the Mississippi River, and the other car, driven by Mrs. Leona Ball, wife of Ben Ball, was on Carondelet Street going across Jackson Avenue in a downtown direction. On Jackson Avenue there was a line of traffic which was standing waiting for the light at the corner of Jackson and St. Charles Avenue to turn to green. This line of vehicles extended from St. Charles Avenue to Carondelet Street and after a small gap between vehicles at Carondelet Street, continued on towards Baronne Street. All of these vehicles were stationary.
Barrow’s car was in the lane on Jackson Avenue in which vehicles going away from the river travel. Just before Barrow reached the corner of Carondelet Street, Mrs. Ball drove her car down Carondelet Street, through the break in the stationary traffic on Jackson Avenue, but before it had crossed that avenue, it was struck on the right side by the car driven by Barrow.
Barrow had secured from Emmco Insurance Company a policy of collision insurance under which it was agreed that should his car be damaged in collision he would pay the first $100 of the cost of repairs and the Insurance Company would pay the remainder. Accordingly, Barrow had his car repaired and paid $110 on account of the cost and the Emmco Insurance Company paid the balance after obtaining a subrogation pro tanto against such person or persons as might be responsible for the accident. Why Barrow paid $110 is not shown, but this is of no importance.
Emmco Insurance Company and Jack Barrow then brought this suit jointly against Mr. and Mrs. Ben Ball, the Insurance Company praying for judgment of $160.26 and Barrow praying for judgment for $110. Both plaintiffs alleged that the accident resulted from the negligence of Mrs. Ball in many particulars; principally in that she failed to keep a proper lookout or have her car under control; failed to yield the right of way; failed to stop for the stop sign which faced her on Carondelet Street, and “blindly” entered a right of way street “through a gap in stationary traffic.”
Mr. and Mrs. Ball answered, admitting the occurrence of the accident but denying negligence on the part of Mrs. Ball, and alleging that the fault was entirely in Barrow in that he was operating his car at an excessive rate of speed; failed to maintain a proper lookout; failed to accord to Mrs. Ball the right of way in spite of the fact that her car had “entered and almost completed the crossing of the intersection”, and in that he failed to see the Plymouth car crossing ahead of him. In *624 the alternative that it should appear that Mrs. Ball was in any way at fault, the defendants especially alleged contributory negligence on the part of Barrow.
Mr. and Mrs. Ball then assumed the position of plaintiffs in reconvention, alleging that the cost of repairing the damage to their car amounted to $397.69, and they prayed for judgment in reconvention for this amount, seeking judgment in recon-vention not only against Barrow, but also against his collision insurer, the Emmco Insurance Company.
From a judgment dismissing both the main and reconventional demands, the plaintiffs, Emmco Insurance Company and Jack Barrow, have appealed, and Mr. and Mrs. Ben Ball have answered the appeal.
It was conceded that the cost of repairing the damage to the Barrow car amounted to $270.26 as prayed for and that the cost of repairing the Ball car amounted to' $397.60 as prayed for by them in reconvention.
The evidence shows that, as Mrs. Ball, on her way down Carondelet Street, approached the corner of Jackson Avenue, she was faced by a stationary stop sign, which is not a traffic light, and that she brought her car to a stop as it reached this sign. She said that she then proceeded into the intersection at a speed of about ten miles an hour, and that she looked in both directions on Jackson Avenue and “could see very clearly that there was no cars coming on either side.” She added: “I didn’t see any traffic; I saw a lot of cars parked.” She also said that when she had reached a point about three-quarters of the way across from the stop sign to the other side of Jackson Avenue, her car was struck by the Barrow car.
Barrow says that, as he approached the intersection at a speed of about 18 or 20 miles an hour, he saw no car about to cross ahead of him and he added: “When I got to the intersection * * * it was a 1956 Plymouth that dashed out from between the cars that were parked * * *,” and that when Mrs. Ball’s car emerged in front of him “she came out less than five feet when I saw her, and when I hit her she was. in the center line of Jackson Avenue.”
The only disinterested witness was another automobile driver, Marshall True-hill. His car was the second in line from Carondelet Street towards Baronne Street, so that he faced Carondelet Street and saw Mrs. Ball’s car as it stopped for the stop sign and as it entered the intersection. He says that Mrs. Ball pulled up to the corner and stopped and then “she shot on out.” He said that immediately ahead of his car was a taxicab and that he and the driver of the cab saw the oncoming traffic, led by Barrow’s car and “knew there would be an accident” and that they both blew their horns “to attract the attention of the lady, but of no avail.” He says, too, that Barrow was driving his car in the proper lane and when asked whether or not Barrow’s vision was obstructed by the stationary cars on Jackson Avenue, he answered that he did not think that Barrow could see what was coming down Caron-delet Street. He then volunteered the following statement:
“Being a driver myself I wouldn’t expect anyone to dash out between traffic without being cautious of the oncoming traffic.”
Since Mrs. Ball did not see the car of Barrow at all and since it is obvious that she attempted the very dangerous maneuver of threading her way through a line of stationary traffic in an effort to cross a heavily traveled thoroughfare, there is no doubt at all of her negligence.
We are concerned, however, with the question of whether under the circumstances Barrow was not himself at fault in not realizing that, since in the stationary line of traffic on Jackson Avenue there was a small break at Carondelet- Street through which other traffic might pass in an effort to cross Jackson Avenue, surely it was dangerous to approach that corner without exercising extreme care.
*625 The situation closely resembles those which were presented to us in Indovina v. Logrande, La.App., 70 So.2d 456, and in Schroeder v. Mounes, La.App., 52 So.2d 67, 69. In the Schroeder case we said:
“As we have already said, the situation was unusual, and under the circumstances, each driver should have exercised the utmost caution. Neither did. Schroeder could easily have noticed that across the two lanes of traffic, which were stationary, there was a narrow open lane through which a car might cross Canal Street, and, on the other hand, Mounes could easily see that, though there were two lanes of stationary traffic, there was still an open lane through which another vehicle could approach.
“Both drivers should have taken these facts into consideration and had either done so the accident would not have occurred.”
We repeated this statement in the In-dovina case. We think, however, that we find a distinction here in the fact that Mrs. Ball unquestionably entered the intersection so suddenly and unexpectedly that Barrow could not have seen her before he did and that when he did see her, her car was immediately in front of his and only a few feet away. We base this conclusion on the statement of Barrow that she “dashed” into the intersection directly in front of his car, and we rely too on the statements of Truehill who says that Mrs. Ball’s car “shot” into the intersection and that it “dashed out” in front of the Barrow car.
We feel that, although under such circumstances, both drivers should exercise extreme care, Barrow did all that was required of him and that the proximate cause of the accident was the great carelessness of Mrs. Ball in suddenly driving her car into the intersection directly into the path of the Barrow car.
Accordingly, the judgment, insofar as it dismisses the suit of plaintiffs, is annulled, avoided and reversed and there is now judgment in favor of plaintiffs as prayed for. The judgment, insofar as it dismisses the reconventional demand, is affirmed, all at the cost of defendants.
Reversed in part, affirmed in part
REGAN, J., concurs.